## THE MIRA A. PRATT.[1]

### SIBLEY v. THE MIRA A. PRATT.

*(District Court, S. D. Alabama. April 27, 1887.)*

1. SALVAGE—SERVICES—TOWAGE.

   The schooner M., being unable "to fetch by Sand island" and keep on her course up the river, sailed for Horn island, for safe anchorage, but seeing a tug lying under Sand island she came to anchor near that island in a heavy sea and strong wind, with breakers all around, and signaled the tug. With the wind as it was and with the sails left she could not have got away. *Held,* that the schooner being in a state of difficulty and in such a situation as afforded a reasonable apprehension of danger, the services of the tug were salvage services, and not mere towage.

2. SAME—SIGNALS.

   When a dispute arises as to whether a signal hoisted was for a tow or a signal of distress, the fact is to be determined by the state of the vessel itself at the time, and the court will consider the state of the vessel in order to determine whether such a signal was a signal for a tow or for assistance. The true question is: What was the condition of the ship? The character of the signal hoisted is only one part of the evidence bearing on the question.

In Admiralty. Salvage. Libel *in rem.*

*Pillans, Torrey & Hanaw,* for libelant.

*Anderson & Sons,* for claimants.

TOULMIN, J. The questions in this case are—*First,* whether it is a case of salvage; and, *secondly,* if it is, how much compensation ought to be allowed to the salvors. It is contended on the part of the claimants that the service rendered was that of mere towage, and that it should be compensated as such only. Towage may be a salvage service when performed in aid of a vessel in distress. 2 Pritch. Adm. Dig. 1835; *The H. B. Foster,* 1 Abb. Adm. 222. Mere towage service is confined to vessels that have received no injury or damage. *The Plymouth Rock,* 9 Fed. Rep. 416. See Newson, Salvage & Towage, 2, 3, 7, and 24. It is also contended by claimants that the signal hoisted by the schooner was for a tow only, and was not a signal of distress. Where a dispute arises as to whether a signal hoisted was for a tow or a signal of distress, the fact is to be determined by the state of the vessel itself at the time, and the court will consider the state of the vessel in order to determine whether such signal was a signal for a tow or for assistance. 2 Pritch. Adm. Dig. 1819, 1820. If the signal hoisted was for a pilot or tow only, that does not prevent the services rendered from being in the nature of salvage. The true question always is: What was the condition of the ship? Was she in distress? The character of the signal hoisted is only one part of the evidence bearing upon the question. 2 Pritch. Adm. Dig. 1820.

The vessel had lost her mainsail, and with the sails left she could not come up to the city, and, as the captain expressed it, "could not fetch

<hr/>

[1]Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

by Sand island." There was considerable wind and heavy sea. Under these circumstances she sailed for Horn island, and, it would seem, for safe anchorage, as it does not appear for what other reason she was seeking the sound there. But, seeing the tug lying under and north of Sand island, she came to anchor near and south of that island and westward of the main channel; in heavy sea; breakers all around; amid strong wind. With the wind as it was and with the sails she had she could not have got away. In this situation she signaled the tug.

It is not necessary there should be absolute danger to constitute a salvage service. It is sufficient if there is a state of difficulty and reasonable apprehension. Neither is it necessary to show that those on board either requested or expressly accepted the assistance if salvage services are rendered to a ship. It is sufficient if the circumstances are such that any prudent man would have accepted an offer of services if it had been made. 2 Pritch. Adm. Dig. 1826, 1827.

The schooner was in a state of difficulty, and, I think, was in a situation to afford a reasonable apprehension of danger. But in attempting to determine the precise degree of danger, whether she would have gone ashore if unrelieved, whether her anchors and chains were insufficient or would have dragged, or how much or how rapidly, much is left to conjecture and uncertainty amid the contradictory opinions of the witnesses. But my opinion is that on a preponderance of the evidence the presumptions were against the schooner, and that the circumstances at the time were such as to justify great apprehension. I therefore think the case one of salvage.

In arriving at a conclusion as to the compensation that ought to be allowed in this case I have found the most difficulty. The amount that ought to be allowed depends upon several considerations; as, *first*, the extent and danger of the services performed; *secondly*, the risk to which the tug and her crew were exposed; *thirdly*, the value of the property saved, and the risk of destruction by which it was imperiled. The rule is that the amount of remuneration for salvage must depend on the circumstances of the case, such as the state of the weather, the degree of danger and damage to the ship and cargo, the risk and peril incurred by the salvors, the time employed, and the value of the property; and, when these are considered, there is still another principle,—to encourage enterprise, reward exertion, and to be liberal in all that is due to the general interests of commerce and the general benefit of owners and underwriters, even though the reward may sometimes fall upon an individual owner with some severity. When no special risk has been incurred by the salvors, salvage reward is allotted upon a calculation of a fair remuneration for time and trouble to the owners of the salving vessel, and to each hand employed. A lower scale of remuneration is given when the case of the vessel salved is not one of present danger, but of urgency. The lowest, when, a vessel being disabled from proceeding, there is a possible contingency of serious consequences. 2 Pritch. Adm. Dig. 1784.

The authorities say salvage should be regarded in the light of compensation and reward,—compensation for the exertion and skill displayed in

the service rendered, and reward granted for the promptness, energy, and daring in saving the property imperiled,—and that the courts should be liberal, but not extravagant, in awarding salvage. The particular salvage service was not, in my opinion, attended with any great danger or peril to the tug, nor did it incur any extraordinary labor or skill, no great risk of life or property, and no deviation from her ordinary pursuits. The tug was actually employed about an hour in getting near enough to the schooner to pass a line to her. It does not appear how many hands she had on board further than the master pilot, engineer, and carpenter. But it does appear that the master consulted his crew, before undertaking the service, as to the wisdom and feasibility of it and their willingness to undertake it. The value of the vessel and cargo was not large, not exceeding $1,300. The tug was doubtless subjected to some increase of peril in case of accident or unskillful handling in approaching the schooner in a heavy wind and sea so near to Sand island shore; but aside from this she incurred no additional burdens or responsibilities, and, as I have said, no great risk of life and property. She was prosecuting on her own part the business for which she was in part designed, and was in the ordinary pursuit of her employment when called by the schooner, and she suffered no loss or injury in rendering the service.

In view of all the circumstances I think $150 would be a just reward. And it is so decreed.